(C. D. 1249)

AMERICAN EXPRESS Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 13, 1950)

*Eugene R. Pickrell* (*Michael Stramiello, Jr.,* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Chauncey E. Wilowski,* special attorney), for the defendant.

Before LAWRENCE and RAO, Judges; FORD, J., not participating

RAO, Judge: Certain merchandise, invoiced as "Niga-Palm Fibre," imported from Argentina, was classified by the collector of customs at the port of New York as crin vegetal, not twisted, and accordingly assessed with duty at the rate of 1 cent per pound, pursuant to the provisions of paragraph 1001 of the Tariff Act of 1930. Plaintiff herein has protested said classification, claiming that the merchandise is entitled to entry free of duty as a fibrous vegetable substance, not

dressed or manufactured in any manner, as provided for in paragraph 1684 of said act. Alternatively, it is claimed that the merchandise is dutiable at only 10 per centum ad valorem as an unenumerated, unmanufactured article, under paragraph 1558 thereof. This latter claim, although referred to at the trial and in the briefs of counsel, has not been supported by any argument. We shall not, therefore, consider the same.

The pertinent portions of the foregoing provisions of the Tariff Act of 1930 are as follows:

PAR. 1001.  *  *  *  crin vegetal, twisted or not twisted, 1 cent per pound; *  *  *.

PAR. 1684.  Grasses and fibers: *  *  *  and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for.

In essence, plaintiff's contention is that the instant merchandise is not crin vegetal, twisted or untwisted, because crin vegetal can only be a fibrous substance which has been twisted, or which has been untwisted after having been twisted; and since the merchandise at bar has never been subjected to a twisting process, it does not fall within the provisions of paragraph 1001, *supra*. Support for this assertion as to the meaning of crin vegetal, as intended by Congress, is alleged to be found in a publication entitled "Textile Fibers" by Matthews; Fourth Edition; in another known as "Standard Cyclopedia of Horticulture," volume II, by Bailey; and in the 1929 Summary of Tariff Information, p. 1619.

These definitions are substantially similar and indicate that crin vegetal is a fiber obtained from a dwarf palm, known botanically as *chamoerops humilis*. It is indigenous to Algeria, and cultivated in southern Europe. The fiber is obtained by shredding the leaves of the plant. It is then spun, or twisted into a slack rope. When the rope is opened, the fiber appears as a curled hairlike material.

Samples of these three stages were received in evidence as plaintiff's exhibits 1, 2, and 3, respectively. Exhibit 1, which represents the fiber after it has been shredded, but not subjected to any further processing, is the merchandise as imported. It consists of threadlike strands of the natural palm fiber. Exhibit 2, which all of the witnesses agreed was crin vegetal, twisted, appears to be a loosely formed rope composed of fibers, while exhibit 3, likewise admittedly crin vegetal, is the result of untwisting material such as exhibit 2.

Plaintiff's witness, George S. Knott, who, as vice president of the Burton-Dixie Corp., purchased the imported material from the consignee thereof, testified that exhibit 1 is a plain natural fiber which he used to make insulation pads to cover inner springs in both mattresses and upholstery; that these pads are used to prevent the springs from protruding; that exhibit 2 was a palm fiber that had been twisted into the form of a rope, and that when it was untwisted by means of

an opener or picker machine, exhibit 3 resulted. He stated further that exhibit 3 was used for stuffing furniture and mattresses; that exhibit 1 could not be so used because it does not have any filling qualities and lacks resiliency; that exhibits 1 and 3 also differ in that they come from two different sections of the country, although he was unable to state whether they came from the same or different palm trees; that even though they were different fibers, if exhibit 1 were twisted, it would form a product like exhibit 2 and would be known as crin vegetal.

With this latter statement, plaintiff's subsequent witness, Jere Fagan, a fiber expert for some 35 years, was not in agreement. He testified that exhibit 1 is a much coarser and more brittle fiber than either exhibit 2 or 3; that it is somewhat different from African palm fiber; that it is known to him as Caranday fiber; and that even if it were twisted, it would not be crin vegetal. He stated further that the purpose of twisting the fibers is to give them curl and resiliency; that the term "crin vegetal," as he understands it, is never applied to a fiber unless it comes from Morocco and is or has been twisted, and that consequently if exhibits 2 and 3 had not been twisted, they would not be known as crin vegetal.

Defendant's witnesses, on the other hand, all of whom were also fully familiar with vegetable fibers for many years, characterized exhibit 1 as crin vegetal, crude, differing from exhibits 2 and 3 only in form. There was unanimity of opinion among them that although exhibit 1 had not been twisted, twisting was not a necessary requirement for the material to respond to the term "crin vegetal"; that except for the processing, exhibits 1 and 3 are the same product and that they were equally suitable for purposes of upholstery.

In addition, it appears from the testimony of defendant's witness, Harry Stone, a shippers' agent for overseas shippers of both vegetable and animal fibers, who stated that he has been in that business for 32 years, that exhibit 1 is a crin vegetal palm fiber and that crin vegetal was developed in Argentina during the war by refugees.

We find that the weight of the evidence establishes that the instant merchandise was derived from a palm leaf of the same variety as the dwarf palm, *chamoerops humilis*, which is found in Algeria and Morocco, and that had it, in the country of production, been subjected to a twisting process, it would unquestionably respond to the description "crin vegetal, twisted," as that term is known and understood in the trade and commerce of the United States. Aside from the contrary testimony of the witness Fagan, all of the evidence supports this conclusion.

If the merchandise at bar in the twisted form would be crin vegetal, twisted, the question arises as to whether, in the absence of such processing, it can properly be described as crin vegetal. The answer to that question depends entirely upon whether Congress, in providing

for crin vegetal in paragraph 1001, *supra*, intended to confine that term to a palm fiber which had been advanced to the stage where, after having been shredded, it had, at least, been twisted into the form of a slack rope, or whether that phrase was meant merely to describe a certain variety or species of palm fiber. Plaintiff's insistence upon the former interpretation derives from its reliance upon the fact that Matthews' definition of crin vegetal includes the following:

\* \* \* It comes into trade in the form of a loosely twisted rope, which when opened up gives a crinkled fiber somewhat resembling hair. \* \* \*

But the language of the statute in its literal significance would seem rather to indicate the contrary. Congress used the words "crin vegetal, twisted or not twisted." If it had intended to include only a product which had been twisted, or one that had been untwisted after having been twisted, it would assuredly have employed the more precise terminology, "crin vegetal, twisted or untwisted." The words "not twisted," as ordinarily understood, can define something that has never been twisted or subjected to a twisting process as accurately as it does an article which has first been twisted and then untwisted. It seems both reasonable and logical to assume that had Congress intended only the latter, the word "untwisted" would have sufficed to carry out that intention.

There is ample data to establish that Congress was aware of the existence of crin vegetal in crude form, and of the possibility of its being imported without advancement from that stage. When this provision was being considered by the Committee on Ways and Means of the House of Representatives, 70th Congress, Second Session, there appeared before that committee a representative of the National Association of Manufacturers of Crin Vegetal, and said representative, Paul E. Woll, testified, in part, as follows:

Mr. WOLL. \* \* \* This industry therefore has suffered heavily during the past year, as has also the manufacturing of upholstery industry, which no longer has a cheap but satisfactory stuffing material.

We ask for assistance and relief by restoring this raw commodity to the free list, if not in the twisted form, then in the untwisted form.

\* \* \* \* \* \* \*

Mr. RAMSEYER. You said that if it could not come in free twisted, we should let it come in untwisted. What would be the difference?

Mr. WOLL. Why do I advocate that?

Mr. RAMSEYER. Yes.

Mr. WOLL. It is possible to twist that in America.

Mr. RAMSEYER. Would it be a little cheaper untwisted?

Mr. WOLL. Very little; hardly enough to pay for the labor of twisting it in this country; but in view of the greater scarcity each year of the article over there, it seems necessary for us to import the shredded plant and twist it on this side, which will involve investing a great deal of capital.

Mr. RAMSEYER. The labor is growing scarcer over there, and what labor they have left now, after this disease struck them, should not be employed in twisting it, but it should come over untwisted?

MR. WOLL. That was my thought.

Mr. RAMSEYER. It comes over now on the same terms, whether twisted or untwisted?

MR. WOLL. Yes; but if the committee decides it is inadvisable to restore it to the free list, possibly a restoration of the untwisted article to the free list would enable us to invest in machinery to twist it here

MR. RAMSEYER. If it comes over untwisted, would you twist it before it is used?

MR. WOLL. Yes. It has to be twisted.

The foregoing seems clearly to indicate that Congress, having been apprised of the fact that crin vegetal could be imported in the crude form, intended to subject the fiber in that form to the same rate of duty as that applying to crin vegetal, twisted, and that, in employing the phrase, "not twisted," it meant it to be interpreted in its literal sense. The conclusion is inescapable.

We hold therefore that the instant merchandise is crin vegetal, not twisted, as provided for in paragraph 1001, *supra*, and that the collector properly classified it as such. All claims of the plaintiff are accordingly overruled.

Judgment will issue in favor of the defendant.